## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PETER G., by and through his
parents, SUSAN T. and RONALD
G., et al.,

        Plaintiffs,

        v.

DERRY TOWNSHIP SCHOOL
DISTRICT,

        Defendant.

CIVIL ACTION NO. 1:23-cv-00043

(SAPORITO, J.)

## <u>MEMORANDUM</u>

This matter comes before the court on a motion by the plaintiffs for judgment on the administrative record. Mot. J. Admin. R., Doc. 27. The motion is fully briefed and ripe for decision. *See* Br. Supp., Doc. 28; Br. Opp'n, Doc. 30; Reply Br., Doc. 31.

### I.  BACKGROUND

The plaintiffs are Peter G., a minor, and his parents, Susan T. and Ronald G. The defendant is the Derry Township School District (the "District").

Peter is a 16-year-old student with disabilities including Attention Deficit Hyperactivity Disorder ("ADHD"), Specific Learning Disabilities,

Epilepsy, Incomplete Hippocampal Inversion, and accommodative vision spasms. As a result of these conditions, he experiences certain executive function issues, including difficulties with working memory, processing speed, social interactions with peers, impulsivity, distractibility, initiation, emotional regulation, and attention.

Peter currently attends a private school for students with learning differences, but he attended school in the District for most of his elementary and middle school years, through the end of the 2020–2021 school year.

In January 2017, during Peter's third-grade year, his parents asked the District for a special education evaluation for Peter.[1] Instead of a formal special education evaluation, and following a discussion with a school psychologist, Peter's parents agreed to start with a Section 504 Service Agreement instead, "with the idea that a special education evaluation may be necessary down the road if the condition does not improve. His progress will be closely monitored to assist with that

---

[1] E-mail messages exchanged between Kim Kulina (teacher) and Susan T. (Jan. 12, 2017), Doc. 7-16, at 158–59.

decision."[2] In February 2017, the District created a 504 Service Agreement for Peter, but it did not conduct a special education evaluation.[3] In April 2017, the 504 Service Agreement was modified to clarify one of its provisions.[4] In October 2017, during Peter's fourth-grade year, the 504 Service Agreement was further modified to provide for annual review.[5] The 504 Service Agreement was reviewed and renewed annually without substantial modification in October 2018, during Peter's fifth-grade year,[6] and in August 2019, during Peter's sixth-grade year.[7] Although a proposed 504 Service Agreement was prepared in August 2020, during Peter's seventh-grade year, a finalized version was never executed by the District and Peter's parents.[8]

---

[2] E-mail messages exchanged between Jason A. Pedersen (school psychologist) and Susan T. (Jan. 20, 2017), Doc. 7-16, at 160–62.

[3] 504 Service Agreement (Feb. 8, 2017), Doc. 7-15, at 3–6; *see also* 504 Notice (Feb. 1, 2017), Doc. 7-15, at 1–2.

[4] 504 Service Agreement (Apr. 19, 2017), Doc. 7-15, at 10–15; *see also* 504 Notice (Apr. 12, 2017), Doc. 7-15, at 7–9.

[5] 504 Service Agreement (Apr. 19, 2017), Doc. 7-15, at 18–21; *see also* 504 Notice (Oct. 12, 2017), Doc. 7-15, at 16–17.

[6] 504 Service Agreement (Oct. 12, 2018), Doc. 7-15, at 24–26; *see also* 504 Notice (Oct. 12, 2018), Doc. 7-15, at 22–23.

[7] 504 Service Agreement (Sept. 19, 2019), Doc. 7-15, at 29–32; *see also* 504 Notice (Aug. 28, 2019), Doc. 7-15, at 27–28.

[8] Proposed 504 Service Agreement (Aug. 24, 2020), Doc. 7-15, at 56–58; *see also* 504 Notice (Aug. 24, 2020), Doc. 7-15, at 54–55. The District's

*(continued on next page)*

During his fourth-grade year, Peter's parents learned from Peter, rather than District staff, that he had been moved into a different reading class to provide him with Tier II reading support, a general education support for students who are struggling with reading. When they addressed this with the District, a guidance counselor reassured them that Peter's team of educators would be available to "review Peter's progress and possible modifications to his 504 accommodations,"[9] but District officials never recommended any evaluation be conducted. Peter continued to receive Tier II reading support through his seventh grade year. He also received Tier II math support during fourth grade.

At the end of his fourth-grade year, a District reading specialist recommended that Peter receive private summer reading tutoring, which

---

proposed 504 Service Agreement did not include Peter's ADHD diagnosis. Peter's parents requested that this condition also be included, and District staff indicated that an updated version with the ADHD diagnosis would be sent to them to sign, but Peter's parents apparently never received the promised updated version of the 504 Service Agreement to sign. *See* E-mail messages exchanged between Caitlin Bodek (guidance counselor) and Susan T. (Aug. 24–26, 2020), Doc. 7-16, at 205–06; E-mail messages exchanged between Jason Pedersen (school psychologist) and Susan T. (Mar. 9, 2021), Doc. 7-16, at 230–33; E-mail messages exchanged between Leanne Shoemaker (special education teacher) and Caitlin Bodek (May 3, 2021), Doc. 7-16, at 235–36.

[9] E-mail messages exchanged between Kris Robino (guidance counselor) and Susan T. (Feb. 6, 2018), Doc. 7-16, at 163–64.

his parents then obtained at their own expense. At the end of his fifth grade year, Peter's parents learned that he would not be permitted to pursue foreign language instruction in sixth grade because of his Tier II reading needs. In none of these encounters with District staff did Peter's parents receive any suggestion that Peter should receive any additional support or evaluation.

In October 2019, early in Peter's sixth-grade year, his parents formally requested that Peter be evaluated for learning disabilities.[10] Throughout first part of the school year, Peter's mother corresponded with his math teacher to express concerns about his progress and performance.[11]

On January 10, 2020, the District issued an Evaluation Report and Notice of Recommended Educational Placement, which found that Peter did not meet the criteria for a disability and was not in need of special

---

[10] E-mail from Susan T. to Caitlin Bodek (guidance counselor) (Oct. 10, 2019), Doc. 7-16, at 183; *see also* Prior Written Notice for Initial Evaluation and Request for Consent Form (Oct. 28, 2019), Doc. 7-15, at 33–35.

[11] E-mail messages exchanged between Victoria Masse (teacher) and Susan T. (Sept. 12, 2019–Nov. 9, 2019), Doc. 7-16, at 168–78, 180–81, 186–87.

education services.[12] The Evaluation Report disclosed very low test scores in many areas, including reading comprehension results in the first and fifth percentiles, and it contained "concerning" descriptions from teachers of Peter's poor school performance, which were at odds with the more encouraging reassurances about Peter's performance and progress that his parents had received from the teachers in direct correspondence.[13] Prompted for their consent to proceed with the District's recommended educational placement, Peter's parents disagreed with his recommendation and requested mediation, noting that "the current instructional method is insufficient to meet [Peter's] needs."[14] The requested mediation, however, never occurred.[15]

---

[12] Evaluation Report ("ER") (Jan. 10, 2020), Doc. 7-15, at 36–49; Notice of Recommended Educational Placement ("NOREP") (Jan. 10, 2020), Doc. 7-15, at 50–53; *see also* E-mail from Jason Pedersen (school psychologist) to Susan T. and Ronald G. (Jan. 10, 2020), Doc. 7-16, at 189–90.

[13] *See* ER (Jan. 10, 2020), Doc. 7-15, at 36–49; Hr'g Tr. vol. II, 21–22, Doc. 7-13, at 7.

[14] NOREP 3 (Jan. 10, 2020), Doc. 7-15, at 52.

[15] The parties apparently dispute why the requested mediation was never scheduled. Peter's parents assign fault to the onset of the COVID-19 pandemic and related school and workplace shutdowns. Initially, they failed to understand that, despite having marked the NOREP form to request mediation, they were also required to contact the Office of Dispute Resolution ("ODR") to initiate the requested mediation process.

*(continued on next page)*

Peter's difficulties continued into seventh grade, particularly under the remote-learning protocols in place due to the COVID-19 pandemic. Peter's parents continued to correspond with District officials, seeking additional educational support for Peter.[16] In March 2021, Peter's parents requested that he be re-evaluated for special education services.[17] On May 6, 2021, the District issued a new Evaluation Report, which found that Peter met the criteria for special education due to

---

After learning that marking the form was insufficient to commence mediation, they attempted to call ODR but were unable to reach anyone to schedule the mediation, despite several call attempts. *See* Hr'g Tr. vol. I, 54–57, 94–95 (Feb. 22, 2022), Doc. 7-14, at 15–16, 25–26.

[16] For example, Peter's parents sought to have Peter attend in-school instruction for four or five full days per week, but they initially were told that particular option was available only to students with special education plans (*i.e.*, IEPs), whereas hybrid (two days in-school and two days virtual) and fully-virtual instruction were the only options available to students with 504 service plans only. *See* E-mail messages exchanged between Erick Valentin (school principal), Caitlin Bodek (guidance counselor), and Susan T. (Aug. 24–27, 2020), Doc. 7-16, at 205–14; E-mail messages exchanged between Erick Valentin and Susan T. (Feb. 9–11, 2021), Doc. 7-16, at 226–27. Ultimately, however, school officials were able to accommodate Peter's return to in-school instruction four days per week by the end of March 2021. E-mail messages between Jacqueline Fuentes-Gillespie (assistant principal) and Caitlin Bodek (Mar. 17, 2021), Doc. 7-16, at 234.

[17] E-mail message from Susan T. to Caitlin Bodek and Erick Valentin (Mar. 4, 2021), Doc. 7-16, at 229; *see also* Prior Written Notice for Initial Evaluation and Request for Consent Form (Mar. 9, 2021), Doc. 7-15, at 59–61.

ADHD and was now eligible for special education services, and an invitation to participate in a meeting with school officials to compose an individualized education program ("IEP") for Peter.[18] On May 17, 2021, following the IEP team meeting on Zoom, the District issued a proposed IEP for Peter, which included both regular and special education supports. After some further input from Peter's parents, a final version of the IEP was approved and adopted on May 27, 2021.[19] Prompted for their consent to proceed with the District's recommended educational placement, Peter's parents approved the plan to provide Peter with special education and related services under the agreed-upon IEP.[20]

Peter, however, did not return to the District for eighth grade. In August 2021, his parents advised the District that they had determined

---

[18] ER (May 6, 2021), Doc. 7-15, at 62–81; Invitation to Participate in the IEP Team Meeting (May 6, 2021), Doc. 7-15, at 82–87; *see also* E-mail from Leanne Shoemaker (special education teacher) to Susan T. and Ronald G. (May 6, 2021), Doc. 7-15, at 88–89.

[19] IEP (May 17, 2021), Doc. 7-15, at 90–125; *see also* NOREP (May 27, 2021), Doc. 7-15, at 127–33. Although the IEP is dated May 17, 2021, it includes changes in response to concerns expressed by Peter's parents in the days following the May 17 IEP team meeting, and it appears to have been actually signed by Peter's parents on May 27, 2021. *See* E-mail messages exchanged between Leanne Shoemaker, Susan T., and Ronald G., with multiple other copy recipients (May 17–27, 2021), Doc. 7-16, at 237–43.

[20] NOREP 3 (May 27, 2021), Doc. 7-15, at 132.

that the program and placement offered by the District was not appropriate for Peter, and that they had located an appropriate program and placement for him at a private school for students with learning differences, where he would begin attending with the 2021–2022 school year.[21]

On January 10, 2022—exactly two years after the District issued its initial Evaluation Report and Notice of Recommended Educational Placement on January 10, 2020—Peter's parents filed a due process complaint, alleging that the District had denied Peter a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and corresponding regulations of the Pennsylvania Public School Code.[22] For relief, Peter's parents sought compensatory education, tuition reimbursement, and reimbursement for an independent educational evaluation.

---

[21] Email from Susan T. to Kirsten Scheurich (special education director) and Leanne Shoemaker (special education teacher) (Aug. 10, 2021), Doc. 7-16, at 247.

[22] Due Process Complaint (Jan. 10, 2022), Doc. 7-22.

On January 20, 2022, the District filed its answer to the due process complaint, raising an affirmative defense under the IDEA statute of limitations.[23] After receiving written offers of proof from both sides, conducting an evidentiary hearing limited to whether the IDEA statute of limitations barred any of the parents' claims, and receiving written closing arguments from both sides, the due process hearing officer issued an order on March 21, 2022, that summarily granted the District's request to limit the scope of the parents claims on statute of limitations grounds, limiting her consideration of the parents' claims to events that occurred on or after January 10, 2020.[24] In its entirety, the order stated:

> Having fully considered the evidence and testimony submitted by the District in support of its request [to] limit the scope of Parent[s'] claims as barred by the statute of limitations, as well as the Parent[s'] response, the District's request is granted.
>
> All claims brought by the Parent[s] in this matter are limited to those to have occurred from January 10, 2020, through the end of the 2021–2022 school year.[25]

---

[23] District's Response to Due Process Complaint (Jan. 20, 2022), Doc. 7-21.

[24] Special Educ. Hr'g Officer Order (Mar. 21, 2022), Doc. 26-2. The hearing officer did not articulate her reasons for this decision on the hearing record either. *See* Hr'g Tr. vol. I (Feb. 22, 2022), Doc. 7-14.

[25] Special Educ. Hr'g Officer Order (Mar. 21, 2022) (footnotes omitted), Doc. 26-2.

The due process hearing officer then conducted a series of eight hearing sessions over several months, receiving evidence on the merits of the parents' claims arising out of events that occurred on or after January 10, 2020.[26] On October 12, 2022, the hearing officer issued her final decision and order, denying all of the parents' claims.[27] In her final decision and order, the hearing officer made no findings of facts and articulated no rationale for her earlier decision regarding the statute of limitations, except to state in summary fashion:

> On March 21, 2022, the Hearing Officer, following a hearing, determined that all claims brought by the Parent[s] in this matter were limited to those to have occurred from January 10, 2020, through the end of the 2021–2022 school year.[28]

Peter and his parents brought this federal civil action shortly thereafter, filing a complaint in this court on January 10, 2023. The complaint sought judicial review of the hearing officer's decision under

---

[26] Hr'g Tr. vol. II (Apr. 27, 2022), Doc. 7-13; Hr'g Tr. vol. III (Apr. 28, 2022), Doc. 7-12; Hr'g Tr. vol. IV (May 5, 2022), Doc. 7-11; Hr'g Tr. vol. V (May 25, 2022), Doc. 7-10; Hr'g Tr. vol. VI (May 31, 2022), Doc. 7-9; Hr'g Tr. vol. VII (June 22, 2022), Doc. 7-8; Hr'g Tr. vol. VIII (July 15, 2022), Doc. 7-7; Hr'g Tr. vol. IX (July 25, 2022), Doc. 7-6.

[27] Special Educ. Hr'g Officer Final Decision and Order (Oct. 12, 2022), Doc. 7-3.

[28] *Id.* at 3.

the IDEA, Section 504, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and related provisions of the Pennsylvania Code, 22 Pa. Code chs. 14, 15. For relief, they ask this court to reverse the hearing officer's findings that the IDEA statute of limitations limited their claims to those arising out of events occurring on or after January 10, 2020, and that they had failed to demonstrate that the District had denied Peter a FAPE.

After the District filed its answer to the complaint, the court bifurcated this action on a motion by Peter and his parents. Under our order granting the motion to bifurcate, the court first considers the plaintiffs' challenge to the hearing officer's decision on the statute of limitations issue. Their challenge to the hearing officer's decision on the merits of their post-January 10, 2020, FAPE claim has been deferred until after the statute of limitations challenge has been resolved.

As noted above, Peter and his parents have moved for judgment on the administrative record with respect to the limitations issue. That motion is fully briefed and ripe for decision.

## II.  STANDARD OF REVIEW

"When considering a petition for review challenging a state

administrative decision under the IDEA, a district court applies a nontraditional standard of review, sometimes referred to as 'modified de novo' review." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012) (internal quotation marks omitted); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012). "Although the [court] must make its own findings by a preponderance of the evidence, the [court] must also afford 'due weight' to the [administrative hearing officer's] determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)); *see also Ridley Sch. Dist.*, 680 F.3d at 268. "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (internal quotation marks omitted); *see also Ridley Sch. Dist.*, 680 F.3d at 268; *D.K.*, 696 F.3d at 243. Claims regarding the hearing officer's application of the IDEA statute of limitations, however, "are subject to plenary review as conclusions of law." *P.P.*, 585 F.3d at 735; *see also D.K.*, 696 F.3d at 243. "[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim

challenged." *Ridley Sch. Dist.*, 680 F.3d at 270; *see also D.K.*, 696 F.3d at 243.

## III.  DISCUSSION

Under the IDEA, states receiving federal education funding must provide a FAPE for all children with special needs. *See* 20 U.S.C. § 1412(a)(1). "The law ensures that right by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (internal quotation marks omitted).

> Once a child is identified as having special needs, a school district provides a FAPE by designing and implementing an individualized instructional program set forth in an IEP, which must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential. To the extent a school district fails to provide a student with a FAPE, a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer. A party dissatisfied with the result of that hearing may then file an action in state or federal court.

*Id.* (citations, brackets, and internal quotation marks omitted).

As noted above, this action for judicial review has been bifurcated. The issue presently before the court is the challenge by Peter and his parents to the hearing officer's application of the IDEA statute of limitations to bar consideration of any claims arising out of events that occurred more than two years before the date when the plaintiffs' due process complaint was filed on January 10, 2022.

In 2004, Congress enacted the IDEA statute of limitations:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C).[29]

---

[29] This trigger for the two-year IDEA limitations period—the date when the parents *knew or should have known* the school district's failure to provide the child with a FAPE—may be fairly contrasted with the school district's "child find" obligation, which is triggered if the school district reasonably *suspects* a child of having a disability. *See A.B. ex rel. K.B. v. Abington Sch. Dist.*, 440 F. Supp. 3d 428, 434 (E.D. Pa. 2020) ("If a district *suspects* a child of having a disability, the district 'must conduct an evaluation of the child's needs, assessing all areas of suspected disability, before providing special education and related services to the child.'") (quoting *P.P.*, 585 F.3d at 730) (emphasis added, brackets omitted); *see also A.W. ex rel. H.W. v. Middletown Area Sch. Dist.*, No. 1:13-CV-2379, 2015 WL 390864, at *9 (M.D. Pa. Jan. 28, 2015) ("As part *(continued on next page)*

In this case, the administrative hearing officer made no findings of fact whatsoever relating to the date when Peter's parents 'knew or should have known' of the special needs of their child and the educational system's failure to respond appropriately to those needs—the date of reasonable discovery. Her two orders—the summary order of March 21, 2022, and the final decision and order of October 12, 2022—articulate only a bare legal conclusion that all claims occurring prior to January 10, 2020, were time-barred.

Instead, the hearing officer appears to have treated the IDEA statute of limitations as a remedy cap, "limit[ing] the scope of a child's remedy to those injuries that actually occurred in the two years before the filing of a [due process] complaint, no matter when the parent reasonably discovered the injury." *G.L.*, 802 F.3d at 612. But this is precisely the approach expressly considered and rejected by the Third Circuit in *G.L. See id.* at 612–14.

---

of the Child Find process, a district must comprehensively evaluate any student it reasonably *suspects* of having a disability under the IDEA.") (emphasis added). *See generally A.B.*, 440 F. Supp. 3d at 433–34 ("'The IDEA . . . requires that a state have a system in place to identify, locate, and evaluate all children in the state who have disabilities and need special education and related services,' *i.e.*, the 'Child Find' requirement.") (quoting *P.P.*, 585 F.3d at 730).

Instead, the Third Circuit has held that the two-year IDEA "limitations period functions in a traditional way, that is, as a filing deadline that runs from the date of reasonable discovery and not as a cap on a child's remedy for timely-filed claims that happen to date back more than two years before the complaint is filed." *Id.* at 616.

> [O]nce a violation is reasonably discovered by the parent, any claim for that violation, however far back it dates, must be filed within two years of the 'knew or should have known' date. If it is not, all but the most recent two years before the filing of the complaint will be time-barred; but if it is timely filed, then, upon a finding of liability, the entire period of the violation should be remedied.

*Id.* at 620–21. As the Third Circuit further explained,

> where parents neither knew nor reasonably should have known of the special needs of their child or of the educational system's failure to respond appropriately to those needs, the other partner in this endeavor—the school district itself—still has an independent duty to identify those needs within a reasonable time period and to work with the parents and the IEP team to expeditiously design and implement an appropriate program of remedial support. This is a profound responsibility, with the power to change the trajectory of a child's life. Thus, . . . when a school district has failed in that responsibility and parents *have* taken appropriate and timely action under the IDEA, then that child is entitled to be made whole with nothing less than a "complete" remedy.

*Id.* at 625.

Peter and his parents contend that, prior to the January 10, 2020, Evaluation Report, they did not know, and reasonably should not have known, that the District was failing to provide Peter with a FAPE, primarily because the District repeatedly assured them that a special education evaluation was not necessary and that the 504 Service Agreements and general education interventions it had provided were sufficient to address Peter's educational needs. It was not until they received the Evaluation Report on January 10, 2022, that they learned, for the first time, that Peter was scoring in the first percentile, or that his teachers had numerous educational concerns about his performance that they had not previously disclosed to Peter's parents. They further contend that the Evaluation Report also included evident inconsistencies and omissions that alerted them that the District not only had failed to appropriately evaluate Peter for a special education, but it had also likely failed to provide him with an appropriate education. Because Peter's parents filed the administrative due process complaint within two years after issuance of the Evaluation Report—indeed, exactly two years after the date it was issued—they argue that the due process complaint was timely filed and, thus, they should be permitted to present evidence

related to the entire period of alleged educational deprivation, going back to Peter's third-grade year.

The District disagrees, pointing to Peter's parent's contemporaneous knowledge of the programming and interventions provided to Peter, and to their apparent and ongoing dissatisfaction with those remedial actions in the months or years prior to issuance of the initial Evaluation Report on January 10, 2022. In particular, the District points to the parents' request for a special education evaluation of Peter in the fall of 2019, and to the emails the parents exchanged with his teachers around the same time, arguing that these communications suggest that the parents knew or should have known that Peter needed and was not receiving appropriate educational services. The District also points to statements by the parents in May 2021 that they had observed a "several year track record" of an insufficient approach to Peter's education[30] and a "consistent downward trend" in his performance,[31] showing that they had knowledge of the facts constituting the alleged

---

[30] *See* E-mail message from Susan T. to Leanne Shoemaker (special education teacher) and other recipients (May 18, 2021), Doc. 7-15, at 196.

[31] *See* E-mail message from Ronald G. to Leanne Shoemaker and other recipients (May 18, 2021), Doc. 7-15, at 200.

IDEA violations before they received the Evaluation Report on January 10, 2022.

"But knowledge of the school's programming does not trigger the statute of limitations." *Connor J. ex rel. Kevin J. v. Kennett Consol. Sch. Dist.*, No. 21-4495, 2023 WL 1452063, at *7 (E.D. Pa. Feb. 1, 2023); *see also Downingtown Area Sch. Dist. v. D.S.*, No. CV 20-0892, 2022 WL 523563, at *8 (E.D. Pa. Feb. 22, 2022) ("Mere knowledge of the education a school is providing a child is insufficient; what parents must discover is that the education amounts to a violation.").

> A parent is theoretically aware every day [of] the District's "action" of providing a FAPE to their child because they send him or her to school and the child may return home at the end of the day. The knowledge the child attends school each day cannot be all [the statute of limitations] requires to file a complaint. A parent cannot challenge the District's provision of a FAPE without a violation. . . . [T]he parents must "discover" the District's actions violated their child's right to a FAPE.

*E.G. v. Great Valley Sch. Dist.*, No. No. 16-5456, 2017 WL 2260707, at *8 (E.D. Pa. May 23, 2017); *see also Damarcus S. v. Dist. of Columbia*, 190 F. Supp. 3d 35, 46 (D.D.C. 2016) ("[T]he mere knowledge that [a student] was not making progress is not enough to trigger notice [under the IDEA], because the lack of progress could have been attributable to [the

student's] low aptitude rather than inadequate educational support."). Rather, "[d]istrict courts within the Third Circuit applying the IDEA's discovery rule have generally focused on clear action or inaction by a school district sufficient to alert a reasonable parent that the child would not be appropriately accommodated." *Brady P. ex rel. Beth P. v. Cent. York Sch. Dist.*, No. 1:16-CV-2395, 2018 WL 1367325, at *7 (M.D. Pa. Mar. 16, 2018).

The relevant inquiry is not whether Peter's parents were *concerned* about his academic performance and educational supports before the Evaluation Report was issued, but whether they *knew or should have known* that the District would not provide Peter with the educational supports necessary to provide him with a FAPE. The administrative hearing officer in this case made no factual findings on this issue. Considering the record before us de novo, we find that, as Peter's parents have contended, the issuance of the January 10, 2020, Evaluation Report constitutes the sort of clear action or inaction by the District sufficient to alert a reasonable parent that Peter's educational support needs would not be appropriately accommodated. Previously, his parents had been concerned about Peter's programming and performance, they had

engaged in dialogue with school officials to express their concerns and seek additional supports, and they had received repeated assurances that Peter's needs could and would be addressed within the 504 Service Agreement context. In October 2019, Peter's parents formally requested that he be evaluated for special education eligibility. But it was not until the District issued its January 2020 Evaluation Report, including detailed findings about Peter's educational performance and testing results, and including the District's ultimate conclusion that Peter was not eligible for special education supports, that his parents could be charged with actually or reasonably knowing that the District would not provide him with a FAPE.

Thus, we conclude that the plaintiffs' due process complaint was timely filed in accordance with the applicable two-year IDEA statute of limitations, and that the hearing officer erred in limiting the scope of the claims she considered to those occurring on or after January 10, 2020.

The hearing officer's summary order of March 21, 2022, and her final decision and order of October 12, 2022, will be vacated. In light of the hearing officer's failure to receive evidence and consider and evaluate the plaintiff's claims concerning actions or events predating the issuance

of the Evaluation Report on January 10, 2020, we find that the appropriate remedy is a remand to the hearing officer to receive evidence and consider the remainder of the plaintiffs' claims on the merits. *See generally Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 525–26 (3d Cir. 1995) ("[W]hile the statute clearly proscribes remands within the state's administrative system, we see no basis for prohibiting judicial remands."); *JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 395 F.3d 185, 198 (4th Cir. 2005) (remanding IDEA suit to district court with instructions to remand to hearing officer); *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 152 F.3d 1159, 1160 (9th Cir. 1998) (per curiam) (ordering district court to stay proceedings and remand to hearing officer); *McLean v. Dist of Columbia*, 323 F. Supp. 3d 20, 24 (D.D.C. 2018) (denying cross-motions for summary judgment and remanding to hearing officer where hearing officer did not sufficiently address key evidence); *A.W. ex rel. H.W. v. Middletown Area Sch. Dist.*, No. 1:13-CV-2379, 2015 WL 390864, at *18 (M.D. Pa. Jan. 28, 2015) (remanding matter to hearing officer to determine compensatory education award); *A.A. ex rel. E.A. v. Exeter Twp. Sch. Dist.*, 485 F. Supp. 2d 587, 590 (E.D. Pa. 2007) (vacating state administrative decision denying compensatory education claim as time-

barred and remanding case to state administrative agency to address merits of claim). This federal civil action will be stayed until administrative proceedings are completed. *See Shapiro*, 152 F.3d at 160–61 (vacating district court's termination of remanded IDEA case and remanding for entry of a stay pending a final determination by the hearing officer).

## IV.    CONCLUSION

For the foregoing reasons, the plaintiffs' motion for judgment on the administrative record (Doc. 27) will be granted, the hearing officer's summary order of March 21, 2022, and her final decision and order of October 12, 2022, will be vacated, the matter will be remanded to the hearing officer to receive evidence and consider the remainder of the plaintiffs' claims on the merits, and this federal civil action for judicial review will be stayed pending a final determination by the hearing officer.

An appropriate order follows.

Dated: January 22, 2025          *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States District Judge